## MALONE v. EL PASO COUNTY WATER IMPROVEMENT DIST. NO. 1. (No. 2225.)

Court of Civil Appeals of Texas. El Paso. Sept. 19, 1929.

Rehearing Denied Oct. 17, 1929.

J. A. Gillett and J. E. Quaid, both of El Paso, for plaintiff in error.

R. F. Burges, of El Paso, for defendant in error.

WALTHALL, J. This case presents an appeal by writ of error from the district court of El Paso county, Forty-First judicial district, from an order of the trial court, Hon. J. C. Brooke, special judge, presiding, sustaining a general demurrer to plaintiff in error's first amended original petition, and to which ruling plaintiff in error duly excepted, and, having refused to amend, the court entered judgment that plaintiff in error take nothing and that defendant go hence without day and recover its costs.

For convenience, we will refer to plaintiff in error as plaintiff, and to defendant in error as defendant.

Plaintiff's suit is for damages to his crop of cotton caused by breaks in what is called the Tornillo Canal, from which breaks plaintiff's cotton fields were flooded, and for which damages thereby sustained plaintiff sues defendant, as is more fully hereafter set out.

Briefly stated, plaintiff's petition alleges, in substance, that defendant is a conservation and reclamation district, organized and existing under the provisions of the Constitution and the laws of this state, and that among the powers and duties thereby conferred upon defendant as such were the right and duty to provide for the irrigation of lands situated as were plaintiff's lands; that, in order to exercise said right and perform said duty, it became defendant's duty, either itself, or by contract with and employment of others, to construct, keep in repair, maintain, operate, and control all necessary storage, reservoirs, canals, laterals, and other works required to accomplish the objects of its creation, and become responsible for and assume all the costs and expense of construction, repair, maintenance, and operation of such irrigation system as same pertains to said lands.

Plaintiff alleges that in the exercise of its right, and to carry out the objects of its creation, defendant, on June 24, 1920, and on October 12, 1922, entered, respectively, into a contract and supplemental contract in writing with the United States. The contract and supplemental contract declared upon, though not set out in its verbiage in the record, it was of record expressly agreed that, in considering and passing upon defendant's general demurrer, the court should consider the contract and supplemental contract referred to in plaintiff's first amended petition, as a part of said petition. It is alleged, in substance, that, in operating said irrigation system under the law, federal and state, and under the said contracts entered into, but without referring to any particular article or section of the law or any part of said contracts, the petition alleges in its sixth paragraph that the defendant had the exclusive management and control of the water distribution under said system, and in that connection gives notice to defendant to produce said supplemental contract.

In the ninth paragraph of the petition it is alleged, in substance, that, by reason of the aforesaid allegations, plaintiff avers that defendant is the owner or beneficial owner of the irrigation system, and is engaged in the joint operation thereof with the federal government, and for that reason defendant is liable for any and all damages that may result from any negligence in management or operation.

Before stating said contract and supplemental contract, it might be properly here said that defendant irrigation district is a political subdivision of this state, as alleged in plaintiff's petition, being organized under chapter 2, tit. 128, Rev. Civ. Statutes of Texas, and found in the Revised Statutes of 1925. Under article 7653 of our Statutes 1925, such districts are authorized to enter into contract with the United States "for the construction,

operation and maintenance of the necessary work for the delivery and distribution of water," and "for the assumption of indebtedness to the United States for district lands," "under provisions of the Federal Reclamation Act and of acts amendatory thereof and supplementary thereto, and the rules and regulations established thereunder," and in connection therewith act as fiscal agent of the United States by appointment of the Board of Directors of the District.

■ The Federal Reclamation Act, of which the courts take judicial knowledge, was approved June 17, 1902 (32 Stat. 388). Section 6 of said act, article 4232, Barnes' Federal Code 1919 (43 USCA §§ 491, 498) provides:

"That the Secretary of the Interior is hereby authorized and directed to use the reclamation fund for the operation and maintenance of all reservoirs and irrigation works constructed under the provisions of this Act: Provided, That when the payments required by this Act are made for the major portion of the lands irrigated from the waters of any of the works herein provided for, then the management and operation of such irrigation works shall pass to the owners of the lands irrigated thereby, to be maintained at their expense under such form of organization and under such rules and regulations as may be acceptable to the Secretary of the Interior: Provided, That the title to and the management and operation of the reservoirs and the works necessary for their protection and operation shall remain in the government until otherwise provided by Congress."

It was not alleged in plaintiff's petition that payments had been made for the major portions of the lands, irrigated in defendant district; nor is it alleged that defendant had succeeded to such management and operation, or either, by any provision of the law or contract or action of the Secretary of the Interior or the federal government.

The petition alleges that plaintiff's farm is supplied with water from what is known as the Tornillo Canal, a part of said system; that about the 6th day of June, 1925, and at other times definitely stated, there were breaks in said canal which flooded plaintiff's lands, thus causing the damages of which he complains.

It is alleged that defendant, or those who were acting with it at the several times mentioned, were guilty of the following acts of negligence:

"The irrigation canal which broke and flooded plaintiff's land was improperly constructed, and after being constructed was not kept in proper repair; was not kept clean, but became clogged with weeds, grass and other obstacles which impeded, blocked and retarded the proper flow of water therein; the same was placed in charge of inexperienced and incapable men and more water was turned into said canal than the carrying capacity of same could handle; that the proper attention was not paid to said canal after the water had been turned therein; and the ditch riders and others whose duty it was to supervise the flow of water in said ditches and canals failed to exercise that degree of care which an ordinarily prudent person would use in the handling of so dangerous a substance as flowing water in large quantities."

It is alleged that plaintiff has been damaged by and through the negligence of defendant, or that of others for whose acts it is legally responsible and liable, as above stated, and in the sum stated, which defendant has been requested to pay, but has refused and still refuses so to do.

Plaintiff filed assignments of error, and thereunder presents these propositions. It is submitted:

First. The contracts pleaded show a joint undertaking and operation on the part of defendant and the United States government, and that negligence on the part of defendant would make a cause of action, even though the United States could not be held for damages.

Second. Error in sustaining the general demurrer, a cause of action being pleaded in that it was alleged that the defendant and the United States jointly operated the water improvement district, and that, by reason of the negligent operation, plaintiff sustained the damages complained of.

Third. Error in sustaining the general demurrer; a cause of action being pleaded in that it was alleged that, under the joint contract between the defendant and the United States, defendant did have control of the irrigation of the lands, and that while in control caused the damage complained of.

It will be seen from the above several propositions that the central and controlling facts insisted upon by plaintiff are, in effect, that, under the law and the two contracts, and especially the supplemental contract applying to the Tornillo Canal extension and system pleaded, defendant and the United States were jointly operating the water district, and under the law and said contracts defendant did have control of the irrigation of said lands.

Plaintiff does not in his petition, nor in his propositions, nor in his statements or arguments, refer to or quote any special section or paragraph in either of the two contracts as sustaining his contentions of a joint ownership, operation, or control of the water system, or as placing the operation or control of the water district or the distribution of the water for irrigation in defendant.

The contracts pleaded by plaintiff, and upon which he relies, and referred to in his propositions, as showing a joint ownership, operation, and control of the water system on the part of defendant and the United States government, are lengthy, and, for brevity, we will state the subject-matter of the several

paragraphs, and will quote therefrom portions, if any, which seemingly refer to a joint ownership, management, operation, or control of the water system, either in its construction or maintenance, or in the distribution of the water thereunder for irrigation purposes:

On June 24, 1920, the El Paso Valley water users' association and the El Paso county water improvement district No. 1, the defendant in this suit, on the one hand, and the United States on the other hand, entered into the following contract, in substance, providing: (1) The agreement was made on the 17th day of January, 1920, by and between the United States of America, acting by John Barton Payne, Secretary of the Interior, under the provisions of the Act of Congress approved June 17, 1902, 32 Stat. 388, and acts amendatory thereof and supplemental thereto, thereinafter styled the "Reclamation Law"; the El Paso county water improvement district No. 1, a public corporation, duly formed under the laws of the state of Texas, with irrigation and drainage powers, its principal place of business at El Paso, Tex., and thereinafter styled the "district"; and the El Paso Valley water users' association, an Arizona corporation, and having its principal place of business at El Paso, Texas, and thereinafter styled the "association."

Witnesseth: That (2) whereas, the association executed a contract with the United States of date June 27, 1906, agreeing to pay part of the cost of the irrigation works of the Rio Grande project which should be apportioned by the Secretary to the shareholders of the association, and that it is now the desire of the shareholders that the liens in favor of the association primarily for the purpose of securing reimbursement to the United States be released, and that the association be dissolved; and,

"(3) Whereas, the District desires to co-operate with the United States as authorized by law and particularly for the construction of drainage works for the distribution and delivery of water for irrigation purposes to irrigate lands of the District;

"(4) Now, therefore, In consideration of the covenants herein contained, it is agreed between the parties as follows:

"(5) The United States will expend, in addition to the amount heretofore expended, (stating the sum) for the improvement, construction and extension of the irrigation system for the storage, distribution and delivery of water to the irrigable district lands and for the construction of drainage works for the restoration and maintenance of the irrigability of district lands, subject always, however, to appropriation therefor being made by Congress. In the improvement and extension of the distribution system, the United States shall use such portions of the systems already in existence as may be utilized to advantage to the extent that the titles to said systems and control thereover may be acquired from the owners thereof for use by the United States. The tentative plan prepared by the United States in connection with this work is as follows:"

Paragraph No. 6 is marked "immaterial," and is not found in the record.

"(7) The United States will continue the operation and maintenance of the irrigation and drainage system until otherwise provided by contract after a vote by the electorate of the District, or until the payments required by the Reclamation Law are made for the major portion of the irrigable lands of the District, subject, however, to appropriation for such maintenance and operation work being made by Congress, and provided always that such operation and maintenance shall be performed only in case the Secretary shall receive satisfactory assurance that lawful assessments and levies are being made or tolls and charges are being imposed, sufficient to merit the expenses thereof, and provided further, that full payment of the cost of the operation and maintenance for previous years shall have been made to the United States. There shall be considered as a part of the operation expense a storage cost of fifty cents per acre for the area of the district actually irrigated, whether or not stored water is used. The water shall be diverted and distributed in such manner as may be hereafter arranged between the Board of Directors of said District and the United States. The United States will so continue to operate and maintain said project works until the issuance by the Secretary of public notice as provided in Section 4 of Reclamation Act approved June 17th, 1902, (32 Stat. 399), whereupon the United States will continue the operation and maintenance of the said project in Texas under the Reclamation Law and public notice issued thereunder."

(8) Section 8 provides for the assumption by the district of the cost of irrigation and drainage works theretofore and thereafter to be constructed for the use and benefit of the district lands, and agreeing to pay same, and stating the aggregate sum, including the cost for construction of the Elephant Butte Reservoir.

(9) Section 9 refers to the charge for the construction of the Elephant Butte Reservoir assumed by the district and referred to in section 8, and provides for the adjustment of costs in the event other similar contracts are made as to other districts in either New Mexico or Texas.

(10) Section 10 refers to a possible change in the boundary line between the two states and the modification of the obligation under the contract in case of a possible change of acreage by reason thereof.

(11) Section 11 refers to the time and the amount of payment for the irrigation and drainage works provided for.

(12) Section 12 provides that, until the amounts payable to the United States for the

construction of the irrigation and drainage works have been fully paid, it is reserved to the Secretary to make rules and regulations and the district to use its powers to carry same into effect, and that its officials may have access to books and records of the Reclamation Service "relative to the costs of the work and the operation and maintenance thereof," and to make copies, and that the United States to have similar rights as to the district.

(13) Section 13 refers to lands incapable of successful cultivation and their relief from payment, etc.

(14) Section 14 provides for the extension of instruments of release from liens existing under subscriptions to stock in trust and agreements with the association, etc.

(15) Section 15 refers to the indebtedness assumed by the district, and what it is understood to be under a previous contract, etc.

(16) Section 16 excludes certain officials and others from having any share or part in any benefit in the contract.

The contract recites that it was duly executed on June 24, 1920, by the United States and the two water corporations.

On the 12th day of October, 1922, the defendant district and the United States entered into what is referred to as the supplemental contract, which, among other things, in substance, provides:

After referring to the above contract between the district and the United States of date January 17, 1920, and its provision for the payment by the district to the United States, stating the maximum amount on account of the cost of the irrigation system of the Rio Grande project, and that under the election held the boundaries of the district were extended by the inclusion of about 8,000 acres of land, known as the Tornillo tract, theretofore included in El Paso county conservation and reclamation district No. 2; and that the El Paso county water improvement district No. 1 now desires the construction of additional works for the benefit of irrigable lands in its district as now constituted, it recites, in substance:

(5) Now, in consideration of the mutual covenants herein contained, it is agreed:

(6) The United States will expend, in addition to the amounts heretofore covered by said contract of January 17, 1920, the sum (stating the amount) for the improvement and extension of the present distribution system; the contemplated extension to include the laterals and main drainage canals as indicated on the map referred to.

(7) The district shall pay the United States the aggregated cost of all works constructed under article (section) 6 hereof, exclusive of the amount named in article 8 hereof.

(8) Upon the completion of the work provided by section 6 hereof, this section provides that the district shall take over from the United States certain material, supplies, equipment, etc., and pay to the United States as part of the construction cost its value not to exceed the amount stated.

(9) The cost of the work provided by this contract to embrace all expenses, etc.

(10) Provides that the Secretary may determine from time to time that specific areas of the irrigable district lands should commence payment for construction costs under this contract, and render statement to the district, and the district to pay such amounts in installments as provided and stated.

(11) Provides that this contract is subject to appropriations being made by Congress from year to year of moneys to do the work provided for.

Sections 12 and 13 not found in the record.

(14) This contract inures to the benefit of and is binding upon the successors in interest of the respective parties.

The record shows that this supplemental contract was duly executed by the United States and defendant district.

Referring to section 6 of the Federal Reclamation Act (43 USCA §§ 491, 498) quoted above, the basis upon which the Secretary of the Interior was authorized and directed to contract for the United States in the use of the reclamation funds for the construction, operation, and maintenance of the irrigation works, including all canals and ditches for the conveyance of water to the lands in the irrigation districts in the system, and providing as said section does that the title to and the management and operation of the reservoirs and works necessary for their protection and operation shall remain in the federal government until Congress shall otherwise provide, and further providing that the maintenance and operation of such irrigation works shall pass out of the federal government only when the major portion of the payments of the reclamation funds used by the Secretary have been made by the district, it seems to us that the above-quoted federal statute specifically and definitely fixes the construction, operation, and the maintenance of the canals and all ditches for the conveyance of the water in the United States.

Paragraph 7 of the contract quoted above provides that "the United States will continue the operation and maintenance of the irrigation and drainage system until otherwise provided by contract." The petition does not allege that the United States has been relieved of its right or duty to operate and maintain the system, by contract or otherwise. It is insisted that the district and the United States jointly operated the irrigation system, and alleges in the seventh paragraph of the petition that "with the express or implied consent of the United States the right to control the waters, time and manner of irrigation, and all matters connected therewith, and defendant has held itself out to

have that authority, and is exercising that authority, and has at all times since 1922."

And in paragraph 8 it is alleged "that in pursuance of the understanding between the United States and the defendant, the defendant has taken over the control of the actual workings of the said District, and the defendant in the exercise of its lawful authority is in full control of the water, water service and actual irrigation of the lands within the district." Then states that applicants for water for irrigation apply to the district, and the district issues the permit, etc., and that charges for the use of water are fixed by the district.

In paragraph 9 it is alleged "that by reason of the allegations aforesaid, plaintiff avers that defendant is the owner, or the beneficial owner of the irrigation system hereinbefore mentioned, having contracted to pay for the same in its entirety, and is paying for the same in the manner agreed upon annually, and the defendant is engaged in the joint operation thereof with the United States and is legally liable for any and all damages that may result from the negligence and careless management and operation of it."

After alleging the damages sustained by the plaintiff and the manner in which it occurred, in the thirteenth paragraph it is alleged "that defendant or those who were acting with it at the times mentioned hereinbefore were guilty of the following acts of negligence and carelessness: The irrigation canal which broke and flooded plaintiff's land was improperly constructed, and after being constructed was not kept in proper repair," and, as above more fully stated, and charging acts of negligence, as we view it, an improper construction, operation, and maintenance of the canal at the place where it broke, rather than negligence in the distribution of the water, or failure to distribute water on application for water for irrigation. In other words, the specific facts alleged in which the petition undertakes to state that the district was jointly acting with the United States was in the distribution of water to plaintiff's lands, and to other lands, while the negligent act or acts charged were improper construction, operation, and maintenance of the canal, and it is not alleged that the district was acting jointly with the United States in the construction, operation, or maintenance of the canal which broke and flooded plaintiff's lands, or any canals in the district. The term "maintain" in Webster's International Dictionary, which has become, in effect, a lawbook on questions, is defined to mean "to hold or keep in any particular state or condition;" "to support;" "to sustain;" "to uphold;" "to keep up;" "to keep possession of;" "not to surrender;" "to bear the expenses of." 5 Words and Phrases, First Series, p. 4277, and authorities cited. To permit the canal to become "clogged with weeds, grass and other obstacles which impeded, blocked and retarded the proper flow of water," would we think disclose an improper maintenance of the canal, rather than an improper diversion and distribution of the water by defendant as authorized by the seventh paragraph of the contract, where it is said: "The water shall be diverted and distributed in such manner as may be hereafter arranged between the Board of Directors of said District and the United States." The clause provides only as to the *manner* of the diversion and distribution of the water to be thereafter arranged. The contract itself does not put the diversion and distribution of the water in the hands of defendant, and it is not alleged that it was thereafter so arranged. But if the diversion and distribution had been as it could properly have been placed with defendant, what liability would have resulted to defendant? None, as we understand it. In said paragraph and immediately following the above quotation is the following: "The United States will so continue to operate and maintain said project works," until the notice provided by the Reclamation Act is given—which seems to show that the parties to the contract did not understand that the diversion and distribution of the water for irrigation was a part of or had to do with the construction, operation, or maintenance of the canal. The district is charged in this project with the return to the United States of the funds used in the construction and maintenance of the irrigation system, and it would seem proper and right the district should have direction of the distribution of water to all irrigable lands in the district; the charges for the use of the water, and the collection of all tolls and charges for its use as fiscal agent of the United States in connection with the federal reclamation project, under article 7653, Revised Statutes of this state, and assume the duties and liabilities as such agent, incident to such action, and, as such agent, have the power to do the things authorized by the statute and the Federal Reclamation Law and without incurring liability for damages for any improper construction, operation, or maintenance of any of the irrigation works not included in any law, state or federal, or contract.

After a careful examination of the statutes, state and federal, relating thereto and two contracts pleaded by plaintiff, we find no provision giving to defendant a voice, much less control or joint control or joint acting with the United States government in the construction, operation, or maintenance of the irrigation works. The state statute, federal reclamation law, and the two contracts, we think state all the duties and fix all the liabilities of defendant as such fiscal agent, and beyond which defendant had no duties or power to act, or power to assume or incur a liability; defendant is a creature of the statute. Certainly it cannot be successfully asserted that defendant can be held liable

for negligent acts done over which it had no voice or duty or power to control. The article of our statute above cited (7653), and under which the Secretary of the Interior was acting in connection with the Federal Reclamation Act, and under which the board of directors on behalf of the district were acting in accepting on behalf of the district appointment of the defendant district as fiscal agent of the United States in connection with the federal reclamation project, and the contracts of the Secretary and the board, making effective the law relating thereto, fixes the relation of the district to the government as the fiscal agent of the government, and control the pleading, tested by a general demurrer, in stating a cause of action against the defendant prior to the time the irrigation works are turned over to the shareholders (the district) by the United States. All of the expense incurred in the construction and maintenance of the irrigation project is met by the federal reclamation fund, and we have no provision in the law, state or federal, acting under the federal reclamation law, or in either of the contracts, which even remotely suggests that any of the expenses incurred in the federal irrigation project shall be met by the irrigation district. In fact the district, as such, has no funds, and has no property, other than the individual lands involved in the contract with the government charged with the obligation to refund to the government the reclamation fund used in constructing and maintaining the irrigation works. All of the tolls collected by the defendant district are collected as the fiscal agent of the government and held in trust for the purpose as above stated. Under article 7653 it is made the duty of the board of directors to make as assessment of an amount sufficient to meet each year all payments accruing under the terms of contracts; "and the board may accept on behalf of the District appointment of the District as fiscal agent of the United States in connection with any Federal reclamation project, whereupon the district shall be authorized to so act, and to assume the duties and liabilities incident to such action, and the said board shall have full power to do any and all things required by the Federal statutes now or hereafter enacted in connection therewith and all things required by the rules and regulations now or that may hereafter be established by any department of the Federal Government in regard thereto." It is not alleged that it was the duty of defendant as fiscal agent, as incident to its assumption as such agent, to operate or maintain the canal and keep it from becoming clogged with weeds, as alleged; nor is it alleged that the federal statutes or any rules or regulations of the federal government had given defendant the right or power to assume or exercise such duties to make the defendant district liable to plaintiff for the damages alleged by reason of the

negligent acts assigned, so that it must be considered that defendant, as such fiscal agent had assumed only such duties and liabilities as are incident to a fiscal agent.

Appellant insists that, the petition having alleged that the irrigation project under the federal reclamation law and under the state law and the contracts as pleaded was a joint undertaking between the United States and the defendant district, the defendant being an irrigation corporation organized for the purpose of contracting with the United States for the construction, operation, and maintenance of the necessary works for the delivery and distribution of water to the lands under the irrigation project, and that, the purpose of its organization having been executed in the construction of the necessary works as alleged, all of the facts alleged are taken as true, and every reasonable intendment is indulged in favor of the petition in considering a general demurrer, the petition was good as against the demurrer, whatever the facts might be on the trial.

■ It is a universal rule that a demurrer is an admission of all facts properly averred in the pleading demurred to. It is equally true, however, that a demurrer does not confess or admit a conclusion of law deduced by the pleading from the facts pleaded; nor does the demurrer admit any construction placed by the pleader on any law or instrument pleaded and set out in the pleading or any facts impossible in law.

Allegations of facts or conclusions of the pleader which are contrary to the law of which the court will take judicial notice, or to the instrument pleaded, are not admitted by the demurrer, but such conclusions or facts are treated as a nullity.

See R. C. L. vol. 21, pp. 506, 502, 508 and 509, § 70, on admissions on demurrer, and the many references in the several notes. This opinion is already too long to review the cases cited.

We have concluded that the trial court was not in error in sustaining the general demurrer.

### On Motion for Rehearing.

■ We desire to refer to only one part of plaintiff in error's motion for rehearing. Under the first proposition in the motion reference is made to articles 7622 and 7765 of our Revised Civil Statutes 1925, and in the argument under said proposition reference is made to article 7741, of our Statutes 1925, and appellant then remarks that the conclusion would seem to be absolutely inescapable that appellee district is simply a conservation and reclamation company under the law for the sole purpose of supplying water to the lands of its territory and the obligation and duty devolved upon it to furnish the water itself or arrange to have it done by the United States or some other responsible contractor.

It is further suggested that the two con-

tracts on their face disclose that they were entered into by appellee district for the express purpose of co-operating with the United States in the accomplishment of the purpose for which it was organized.

We concur in what is there said. Appellee was organized for the specific purpose of furnishing water to irrigate the lands within the district, and for that purpose entered into the two contracts with the United States under the provisions of the latter portion of section 21, c. 87, General Laws of the Thirty-Fifth Legislature 1917, p. 179, now article 7653, Rev. St. 1925. We stated the substance of the article in the original opinion.

The duties and powers given irrigation districts under the above article of the statute must not, however, be confused with the authority given irrigation districts by section 24 of c. 77, 36th Leg., 2d Called Sess., p. 227, amending section 24, c. 87, General Laws of the Regular Session of the Thirty-Fifth Legislature, p. 180, now article 7656, of our present statutes, nor section 108, c. 28, Acts 2d Called Sess., 36th Leg., 1919, p. 74, and now article 7765 and related articles. Article 7656 empowers districts created under the provisions of the act to itself construct the irrigation system and all improvements required to irrigate the lands in the district.

Article 7765 authorizes all districts organized under the provisions of the chapter above referred to, and acting under and through its board of directors, to themselves construct all works and improvements necessary for the irrigation of lands in said districts, and to supply, deliver, and sell water for the purposes therein stated, the directors of such district, subject to the provisions of that chapter, to have full authority to manage the districts and the business of such districts for the purpose of carrying out the purposes of the organization.

It will be seen on analysis of the several provisions of our statutes that, while the purpose of the law in creating the water districts are similar, each acting under a board of directors, each board of directors doing for its district or districts the things it is specially authorized to do in the construction of a water system, and the distribution and use of the water therefrom, there is this difference: Acting under article 7653, the district was authorized to, and it is alleged did, contract with the United States to construct, operate, and maintain an irrigation system for the delivery and distribution of water from and under such system. Under that contract the United States was acting solely for itself as one of the contracting parties, and not for the district, acting under the said article and the Federal Reclamation Act, rules, and regulations, and using its own money in constructing, operating, and maintaining the irrigation system; the district

acting under said article for itself, and not for the United States, as one of the parties to the contract; each of the contracting parties for itself contracting and assuming to do what each could do under the said article of the statute and under the Federal Reclamation Act and the rules and regulations of the Secretary of the Interior.

There is nothing, as we view it, in the state or federal laws under which the United States and the district were acting, or in the contracts entered into, which show a joint undertaking and obligation, or joint acting together, that would or could make either liable for a negligent failure of the other contracting party to do the things it had contracted to do. Now, under the other articles of the statute referred to, where the district itself was authorized to and did construct its irrigation system, and, was operating and maintaining it in the distribution of the water to the lands under its system, the district might be liable for a negligent failure to perform its duty and undertaking; but such is not this case. Appellant has brought his suit against the district, alleging contracts with the United States in the construction, operation, and maintenance of the water system, under the water system constructed, operated, and maintained by the United States, and allege a joint undertaking and obligation in the operation and maintenance of the system. In a sense, the United States and the district were acting together in contracting that the United States would construct, operate, and maintain the water system, and that the district would do the things authorized and necessary to be done to reimburse the United States for the money expended, but, as we view it, in no other sense.

The motion is overruled.