JOHN D. LIVANIS, APPELLANT, V. NORTHPORT IRRIGATION DISTRICT, APPELLEE.

FILED OCTOBER 29, 1931. No. 27067.

T. F. Neighbors, Coulter & Atkins and Morrow & Morrow, for appellant.

R. O. Canaday, contra.

Heard before GOSS, C. J., ROSE, GOOD, EBERLY, DAY and PAINE, JJ.

DAY, J.

This case is now before the court for the second time, a motion for rehearing having been allowed. For a statement of the case, reference is made to the former opinion, 120 Neb. 314.

The plaintiff alleged two causes of action. The first was brought under section 21, art. I of the Constitution, which provides: "The property of no person shall be taken or damaged for public use without just compensation therefor." This raised the identical question which was presented and decided in *Spurrier v. Mitchell Irrigation District*, 119 Neb. 401. The plaintiff cannot recover on the first cause of action and the trial court was right in entering a judgment on the pleadings adverse to the plaintiff.

The second cause of action is based upon the negligence of the defendant in the construction, maintenance and operation of the irrigation works. As will be noted by reference to the former opinion, we held that the reply admitted the allegations of the answer and attempted to plead a new cause of action, which amounted to a departure; that upon the allegations of the petition and the admissions of the answer the plaintiff was entitled to a judgment on the pleadings. It was the opinion of this court that, when the plaintiff alleged that the defendant operated irrigation works and sought to recover for negligence up-

on that theory, he could not recover upon a cause of action based upon a contract, even though this contract provided that they must ultimately pay the damage. It seemed to change the basis of recovery from an action sounding in tort to one in contract, which was in the nature of an indemnity agreement. It seems obvious that such a pleading is a departure from the original cause of action. The test of departure in a reply is whether evidence of facts alleged in it could be received under allegations of plaintiff's original pleading, or whether such evidence would contradict the facts originally alleged. Applying this test to the case at bar, the writer is still of the opinion that the reply in this case, unexplained, amounts to a departure. It has been held that where the petition for damages for death caused by the escape of electricity charges the defendant as the owner of the wires, and the reply charges it as having sold and delivered electricity to a distributor on such wires, it amounts to a departure. *Pressley v. Bloomington & Normal Ry. Co.*, 271 Ill. 622.

However, the plaintiff in his motion for a rehearing filed in this court states that the action is not based upon the contract, but that he pleaded the contract to show that it did not bar the right of the plaintiff to recover after the defendant had alleged the contract as a defense. In other words, he contends the effect of the contract upon the rights of the parties was squarely before the court so that it required construction.

The issue resolves itself into one proposition: If the setting up of the contract with the United States in the amended reply does not amount to a departure, does a proper construction of the contract and pleadings sustain the judgment of the trial court? This was the limitation by the court upon the argument upon the rehearing. Stated in another way: Is the relationship of the district and the United States under their contract, considered in connection with the federal and state statutes, such that the negligence of the United States in the construction, operation and maintenance of the irrigation works is imputable to the irrigation district?

From the four corners of the contract it appears that the United States will construct, maintain and operate the irrigation works for the benefit of the district. The district agrees to pay the United States the entire cost of such works, using its taxing power to collect the sums of money due. The cost of operation and maintenance shall be paid by the district. When, at last, the payments are made, which are due the United States, the care, operation and maintenance of the irrigation works will be transferred, not unrestricted, to the district, but "under such rules and regulations as the secretary of the interior may prescribe." The construction work to be done is such as in the opinion of the secretary may be necessary. This is not the contract of a principal with an agent, with the Northport Irrigation District in the role of principal and the United States as agent. The contention of the plaintiff that the district is operating an irrigation system through the instrumentality of the United States is untenable. The contract in positive terms negatives such a construction. The only function of the district under the contract is to collect and pay for the service of carrying water to the lands within the district and included in that expense is the cost of the construction, maintenance and operation of the works. All of the expense is to be, not such as the district may direct, but such as the United States may deem necessary. The doctrine of imputed negligence is not in vogue in this state except with respect to the relation of partnership, principal and agent, or master and servant. *Andersen v. Omaha & C. B. Street R. Co.*, 116 Neb. 489; *Hajsek v. Chicago, B. & Q. R. Co.*, 68 Neb. 539. It is obvious from the pleadings, including the contract set out in the reply, that the construction, operation and maintenance of the irrigation works was in the exclusive control of the United States, and that the negligent acts complained of were solely the acts of the United States. The relationship is neither that of principal and agent, nor of master and servant, and the negligence of the United States cannot be imputed to the district. Aside from these two relationships, there is no theory of the law whereby

the negligence of one may be imputed to another, making that other responsible for the consequent damage.

However, the contract must be construed with reference to the federal and state statutes, which are as much a part thereof as though incorporated into the body of it. The powers, duties and liabilities of the district and the United States are only such as each is authorized by statute to assume. The federal statute applicable to this case is 43 U. S. C. A., secs. 523, 524. These statutes authorize the secretary of the interior to dispose of surplus water impounded for the purpose of irrigating public lands to, among others, irrigation districts. The method of carrying out the provisions of this act is provided in that canals and ditches may be constructed. It is also provided that, when the payments required by the act are made, then the management and operation of such irrigation works shall pass to the owners of the land, to be maintained at their expense under such rules and regulations as may be acceptable to the secretary of the interior. It is further provided that the title to and the management and operation of the reservoirs and the works necessary for their protection and operation shall remain in the government until otherwise provided by congress. Surely there is nothing in the federal statutes which indicates that, in the construction, maintenance and operation of irrigation works, the United States was to become the contractor for, or the agent of, the irrigation districts formed to take advantage of its facilities for impounding and carrying water to the land. In effect, the federal statutes negative such a relationship, by the retention of title to the works; by absolute control of the construction and maintenance; and finally by providing that when the works are eventually turned over to the district it shall be under such rules and regulations as are acceptable to the secretary of the interior.

But the federal statutes, pertinent to this case, provide that the United States in its irrigation projects shall proceed in accordance with the state laws. From this premise it is argued that congress could not relieve or release irri-

gation districts from any of the obligations and liabilities imposed by the statutes of the states. We will state the substance of the state statutes, because to quote them would unreasonably extend this opinion. The contract between the United States and the district was executed February 24, 1919. Section 3466, Rev. St. 1913, was amended by section 3, ch. 69, Laws 1915, now section 46-110, Comp. St. 1929, for the purpose of authorizing irrigation districts to contract with the United States for the construction, maintenance and operation of works to carry to and distribute water on the lands of the district. Sections 46-201 to 46-205, Comp. St. 1929 (Laws 1915, ch. 205), empower irrigation districts to contract with the United States for a supply of water for the irrigation of lands in the district. Later, the legislature passed another act authorizing irrigation districts to cooperate with the United States under Act of June 17, 1902, for the purchase, extension, operation or maintenance of irrigation works. Comp. St. 1929, secs. 46-197, 46-198, Laws 1917, ch. 191. This statute is evidently the authority under which the contract in question was executed. Does this create a new type of irrigation district? Possibly not, considered as a corporate entity. But it does enable the district to contract for delivery at the land for water, without liability for negligence in the construction, operation and maintenance of the ditches of another, who is a common carrier so far as the owners of land in the district are concerned.

Another statutory obligation which it is urged devolves upon the district is to drain all subirrigated lands in the district, as provided by section 46-132, Comp. St. 1929. This is a contractual obligation imposed by statute, independent of negligence, and arises from the mutual agreement of the organizers of the district to drain each others land. This is pointed out in *State v. Farmers Irrigation District*, 116 Neb. 373. The remedy afforded by this statute is exclusive to the owners of land within the district. *Spurrier v. Mitchell Irrigation District*, 119 Neb. 401. The plaintiff in this case, as lessee of the land involved, may avail himself of this remedy.

The contract in plain unequivocal terms provides that the United States shall have full control of the construction and operation of the works. The plaintiff is not aggrieved in this respect. The records in the office of the state engineer, of which we take judicial notice, show that the owner of the land, under and through whom the plaintiff, a tenant, acquires his rights to possession and enjoyment, signed the petition for the organization of the district for the purpose of entering into this very contract. This assumes that C. F. Haggerty and Catherine Haggerty is one and the same person. Even if this is not true, nevertheless the record is that the district was organized upon the petition of a majority of the owners of the land. The statutes of the state may not create a new type of district, but they do place upon districts a different function and duty, and they do specifically authorize such a contract as the one in question. It appears from the pleadings that, as the United States and not the district had been and was at the time in absolute control of the construction, maintenance and operation of the irrigation works, the negligence, if any, was its negligence, for which the district was not liable, and that, therefore, this action was brought against the wrong party. This is not altered by the provision in the contract which contemplates that, when payment is made by the district to the United States, the works will then be turned over to the district. Until that time comes, and the district is negligent in some manner in the construction, maintenance and operation of the works, such an action as this cannot be maintained.

The relationship between the United States and the district must be determined from the contract and the statutes, both state and federal. The only obligation thus assumed by the district is to collect and pay—collect from the landowners and pay the United States. The contract requires the United States to (1) store water in the Pathfinder reservoir; (2) grant to lands in the district a perpetual water right; (3) to use its carriage right in Farmers Irrigation District canal for benefit of district; (4) to construct the necessary irrigation works to irrigate the

lands in the district; (5) to construct drainage works; and (6) to operate and maintain the system until the district complies with certain conditions; while the only obligation of the district is to collect and repay the money to the United States. This relationship has been denominated that of fiscal agent. *Malone v. El Paso County Water Improvement District* (Tex.) 20 S. W. (2d) 815. See, also, *Twin Falls Canal Co. v. American Falls Reservoir District No. 2*, 49 Fed. (2d) 632.

It is vaguely hinted by appellant that the words used in the state statute, "cooperate with," may indicate a partnership. Since we have stated in substance the provisions of the contract, it seems unnecessary to state that no such relationship exists. The cooperation indicated here is best illustrated by that ancient classic example of the cooperation between the lion and the lamb.

In conclusion, whether we consider the pleading of the contract in the reply, together with the admissions to allegations in the answer, as a departure, or consider it as a denial of the allegations of the answer, and construe the contract to determine if the negligence of the United States in the construction, operation and maintenance of the irrigation works is imputable to the district, we conclude that the judgment of the trial court should be affirmed.

AFFIRMED.

ROSE and GOOD, JJ., dissent.