Argued March 20; affirmed April 10, 1945

# KLAMATH IRRIGATION DISTRICT *v.* CARLSON

### CARLSON

(157 P. (2d) 514)

Before BELT, Chief Justice, and ROSSMAN, KELLY, BAILEY, LUSK and BRAND, Associate Justices.

*J. H. Carnahan,* of Klamath Falls, for appellant.

*William Ganong,* of Klamath Falls, for respondent.

KELLY, J.

The certificates of delinquency in suit are based upon unpaid irrigation district taxes for the years 1936, 1937 and 1938.

The major question here is whether alleged damages to defendant's land by reason of negligent maintenance and operation of the irrigation system in suit will support defendant's claim against plaintiff for affirmative relief by way of recoupment, set-off or counterclaim.

Defendant's answer embraces the joining of the issues upon the allegations of plaintiff's complaint and the affirmative allegations set forth in three further and separate answers. It must be borne in mind that throughout the trial the circuit court held that the matter thus appearing in defendant's pleadings comprised a proper defensive basis for the introduction of testimony relevant thereto tending to challenge the validity of the assessments upon which the certificates of delinquency in suit are based.

Defendant, in his first further and separate answer, alleges failure to furnish defendant irrigation for 13.8 acres in the SE¼ of the NW¼, and 8.3 acres in the NE¼ of the SW¼ of section 10, or a total of 22.1 acres therein called parcel 1 and 10.5 acres in the SE¼ of the SW¼ of said section 10, therein called parcel 2.

Defendant also alleges that he has paid taxes to

plaintiff on parcel 1 from 1919 to 1935, both inclusive, in the aggregate sum of $1,038.26 and that he has paid taxes to plaintiff on parcel 2 from 1926 to 1935, both inclusive, in the aggregate sum of $40.00.

The construction of Drain No. 20 by the United States for the benefit of plaintiff district is also alleged and it is further alleged that said drain effectively prevents the conducting of water from the northerly and easterly side of said drain to irrigate lands on the westerly side thereof. The record, which includes a right of way map of the premises, discloses that parcel 1 and parcel 2 above mentioned are on the westerly side of Drain No. 20.

Acquisition by plaintiff of control of the system of irrigation in suit by paying the major portion of the cost of the project in so far as it served the irrigable lands of plaintiff district is also alleged in defendant's first further and separate answer.

It is further alleged therein that plaintiff's claim that the United States was operating and managing said system of irrigation was a subterfuge and fraud.

It is also alleged that, by instituting this suit to foreclose the certificates of delinquency herein, plaintiff should be and is estopped and debarred from asserting that it is not responsible for the acts mentioned in defendant's first, second and third further and separate answers.

Defendant's second further and separate answer and defense is based upon the alleged value of the use, occupation and rental of defendant's lands from 1934 to 1940, both inclusive, amounting to $2,688.00 of which defendant claims to have been deprived by the acts of plaintiff in refusing to furnish water for said lands.

Defendant's third further and separate answer is based upon alleged damage caused during the years 1936, 1937, 1938, 1939 and 1940 by the overflow, flooding and seepage from the irrigation system in suit which defendant alleges caused his land to become waterlogged, seeped, inundated, alkalined and boggy. This damage is alleged to aggregate $6,030.00.

■■■ In reference to defendant's first and second further and separate answers, in so far as defendant seeks relief therein from plaintiff district by reason of the district's alleged failure to furnish defendant irrigation, we think that no basis for such relief has been proved. In order to establish such a claim, it must appear that defendant made a demand upon plaintiff district for irrigation service and that a reasonable time thereafter had elapsed within which plaintiff failed to comply with it. It is true that in his answer defendant pleads that a demand therefor was made, but no such demand by defendant is shown by the evidence. The presence of an obstructing drain does not change the rule nor excuse the demand. Benefit to the owner of irrigable land within an irrigation district sufficient to render assessment by such district valid is shown when it is proven that there is in existence or in reasonable contemplation an irrigation system capable of delivering water thereto and that there has been an allotment of water rights to the land in question. 67 C. J., Subject: Waters, p. 1342, Section 933, and authorities there cited.

■ To overcome the effect of the federal control of the maintenance, upkeep and operation of the system, the allegation is made by defendant that such control is a subterfuge and a fraud; and it is also alleged that a major portion of the cost of the project had been

paid by plaintiff district. These allegations of fraud and payment were not proved.

The right to the control by the United States Government of the irrigation project in suit attended its initial installation and continued until payments by the owners of the land irrigated were made as required by the Act of Congress of June 17, 1902, for the major portion of the reclamation or construction charges due the United States and allocable against plaintiff district. Vol. 32, U. S. Stat. at Large, Chap. 1093, p. 388, et seq.

The record before us discloses that it was not until the month of March in the year 1942, that payments, made in accordance with the provisions of said Act of Congress of June 17, 1902, by the irrigable land owners in plaintiff district aggregated the major portion required therefrom.

No claim is made or suggested that prior to payment for said major portion of the construction charges, plaintiff requested the Secretary of Interior to transfer to plaintiff the care, operation or maintenance of all or any part of the project works in suit, or that the Secretary of the Interior made any such transfer pursuant to the proviso in Section 5 of the Act of Congress on August 13, 1914. Vol. 38, U. S. Stat. at Large, Chap. 247, p. 686, et seq.

■ The alleged negligence of the United States Government, while in control of the operation, maintenance and conduct of the irrigation system in suit, could not be imputed to plaintiff; hence no suit or action based on such alleged negligence could be maintained by defendant against plaintiff. *Livanis v. Northport Irrigation District,* 120 Neb. 314, 232 N. W. 583, affirmed on rehearing, 121 Neb. 777, 238 N. W. 757; *Malone v.*

*El Paso County Imp. Dist. No. 1,* (Tex. Civ. App.) 20 S. W. (2d) 815; *Twin Falls Canal Co. v. American Falls Reservoir Dist. No. 2,* 49 Fed. (2d) 632, affirmed on appeal, 59 Fed. (2d) 19.

The statute expressly provides that—

"The counterclaim of the defendant shall be one upon which a suit might be maintained by the defendant against the plaintiff in suit." Vol. 2, Section 9-114, O. C. L. A., p. 34.

■ By instituting this proceeding to foreclose its certificates of delinquency, plaintiff was not nor should it have been, estopped from meeting defendant's allegations of payment, fraud and subterfuge by proof that the aggregate payments were not sufficient to entitle plaintiff to take control of the operation of said project and that no subterfuge or fraud had been practiced.

■■ Moreover, a tax cannot be paid or discharged by a set-off or counterclaim against the taxing district, or, a fortiori, against the collector. Vol. 3, Cooley on Taxation, (4th Ed.) p. 2481, section 1249. Illegal or excessive taxes paid in previous years cannot be set off against current tax demands unless by express provision of statute. Ibid, page 2641, section 1336.

"The right to recover moneys paid on a void tax exists only as provided by statute." *First National Bank v. Benton County,* 154 P. (2d) 841, 844, and cases there cited.

The testimony is conflicting upon the question whether by leakage, seepage or overflow, beginning about the year 1934, some thirteen acres of defendant's land in the east half of section 10, lying easterly from the ditches mentioned in defendant's answer and some 20.5 acres in the southwest quarter of the northeast

quarter and the east half of the west half of said section 10, lying westerly from said ditches have become water-logged, seeped, inundated, alkalined and boggy so that said lands were rendered unfit for cultivation.

If it had been proven that when such assessments were levied the part of defendant's land last above mentioned was not irrigable land, the court would necessarily hold that said land would not be subject to such assessment and the certificates of delinquency based thereon would not be valid. *Morrow v. Farmers' Irrigation District*, 117 Neb. 424, 220 N. W. 680. Guided by the testimony, however, and by the definition of "irrigable land" approved by this court in *Cabell et al. v. Federal Land Bank of Spokane*, 173 Or. 11, 144 P. (2d) 297, 302, and cases there cited, we think that no error was committed by the trial court in holding that the assessments, upon which the certificates of delinquency in suit are based, were valid assessments.

The record discloses that on March 15, 1926, W. M. and Vanda Setak conveyed to plaintiff two strips of land each thirty feet in width, being fifteen feet on each side of the center line of a ditch then constructed over and across the premises of grantors. The strip first described in the deed of conveyance thereto commenced on the north line of the northwest quarter of the northeast quarter, and the northeast quarter of the northwest quarter of section 10, township 40 south, range 9 east of the Willamette Meridian and extended thence in a southeasterly direction as the ditch was then located to the east line of the southeast quarter of the northeast quarter of said section 10.

The second strip began in the northeasterly quarter of said southwest quarter of the northeast quarter and ran thence in a southwesterly direction over and

across the southwest quarter of the southeast quarter and northeast quarter of the southwest quarter of said section 10. These are known to the record as the Schubert and Quimby ditches.

The United States Government through the Bureau of Reclamation made use of these ditches as laterals in the conduct and operation of the irrigation system in suit. It is alleged by defendant that water therefrom seeped, leaked and overflowed upon defendant's land; and defendant argues that the damages thus alleged to have been sustained thereby are recoverable from plaintiff.

We think that in the absence of any control of plaintiff over the conduct and operation of those ditches no liability attached to plaintiff even if such a claim could be allowed in this proceeding.

Defendant denounces the principle, which, in the absence of congressional consent, exempts the United States from suit or action. This principle affects all people dealing with the United States Government and the courts are without authority to disregard or annul it.

The decree of the circuit court is affirmed.

Mr. Justice Brand did not participate in this opinion.