**EL PASO COUNTY WATER IMPROVE-MENT DISTRICT NO. 1 et al., Appellants & Cross-Appellees,**

v.

**CITY OF EL PASO, Appellees & Cross-Appellant.**

**CITY OF EL PASO, Appellees & Cross-Appellant,**

v.

**EL PASO COUNTY WATER IMPROVEMENT DISTRICT NO. 1 et al., Appellants & Cross-Appellees.**

No. 15954.

United States Court of Appeals Fifth Circuit.

April 2, 1957.

Rehearing Denied May 24, 1957.

Eugene T. Edwards, El Paso, Tex., William H. Veeder, Atty. Dept. of Justice, Washington, D. C., Louis A. Scott, Holvey Williams, Asst. U. S. Atty., El Paso, Tex., J. Lee Rankin, Sol. Gen. of U. S., Washington, D. C., for appellants.

Allen R. Grambling, H. E. Brockmoller, Travis White, Harold L. Sims, El Paso, Tex., for appellees.

Theodore Andress, El Paso, Tex., W. Morgan Hunter, Austin, Tex., Andress, Lipscomb, Peticolas & Fisk, El Paso, Tex., and Powell, Wirtz, Rauhut & McGinnis, Austin, Tex., of counsel, amici curiae on behalf of Ronald Miller et al.

Before HUTCHESON, Chief Judge, and CAMERON and JONES, Circuit Judges.

HUTCHESON, Chief Judge.

El Paso Water Improvement District No. 1, organized under the laws of Texas, five individual land owners, all in the Texas unit of the Rio Grande Federal Reclamation Project, and the United States of America, as plaintiffs, brought this suit against the City of El Paso, a Texas municipal corporation, situated in the extreme western limit of the state on the north bank of the Rio Grande River.

The relief sought was the establishment and enforcement as between plaintiffs and the defendant of their respective rights to the use of the water of the river and, as a determining factor therein, the validity and effect of several written contracts between the United States and the plaintiff district, on the one hand, and the defendant City of El Paso, on the other, wherein, for stated considerations, the defendant was given the right to secondary use of the water of the Rio Grande, and, under certain circumstances, the right to use project facilities.

The City contested the claims of the plaintiffs and denied the validity of the ordinances and contracts, including a deed of the city, relied on by plaintiffs.

By way of counter-claim, it sought a recovery from the District of moneys collected from the City for project waters furnished the City and for the use of equipment and facilities, and an injunction against refusing the City free use of the facilities in future.

A further claim was that the United States and the District were liable to it for $51,397.69 for the cost of bridges which the City had been compelled to build across the Franklin Canal because, though under the deed from the City the United States and the District were to keep and maintain bridges across the canal, they had failed to do so.

Finally, attacking the contracts relied on by plaintiffs as invalid and as not having the effect claimed for them, the City sought, as plaintiff had done, a judgment declaring and enforcing its rights.

Thereafter, the case was fully tried to the court without a jury and as fully briefed and argued, and the district judge filed a thoroughly worked out and exhaustive opinion.[1] In it succinctly but comprehensively stating and documenting the facts and issues and the conclusions of fact and law controlling his decision, he canvassed, discussed, and disposed of, in the main in plaintiffs' favor, the material contentions and counter-contentions of the parties, and entered judgment accordingly. Both plaintiffs and defendants have appealed.

By their appeal, plaintiffs test for error and seek to reverse the portions of the judgment adverse to them, while the defendant, by its cross-appeal, tests for error and seeks to reverse the adjudications contrary to its contentions.

The district judge, in his general grasp of the issues involved and of the law relating thereto, and in the accuracy and precision of his statement of the facts, out of which the issues arise, has done a thorough and workmanlike, indeed a monumental job of setting the case forth in its particulars and as a whole. Because he has, we will not attempt here a general restatement of either the facts or the controlling principles of law. Instead, with respect to the contentions of the parties, as to which we agree with the district judge, we will, stating that we do, refer to and adopt as our own his discussion and decision of the law and the facts; while, with respect to the contentions as to which we disagree with him, we will make a brief statement of our reasons for so doing.

In this view, it becomes unnecessary for us to discuss many of the matters dealt with in the briefs. This is particularly so as to plaintiffs' contention, that the waters of the Rio Grande were committed to the primary service of the Rio Grande Project prior to the effective date of the Rio Grande compact between Colorado, New Mexico and Texas, and the district judge erred in not definitely so declaring. It is sufficient for the purpose of this appeal to say: that the district court, on grounds sufficient to support the finding, adjudged that they were committed to such primary service; that the water supply contracts of Feb. 18, 1941 and December 1, 1944, between the United States, the District, and the City of El Paso "are valid in all parts"; that the contract of August 10, 1949, between the City and the District "is valid in its aspect as a rental of project works for use in delivery of water to the defendant; and that, in our opinion, it is valid in all its aspects."

Disposing first of the city's cross appeal and the attacks upon the judgment it puts forward, it is sufficient to say that, upon the facts found and for the reasons assigned by the district judge, we are of the clear opinion that none of them are well founded and that, as against each claim of the cross-appeal, the judgment must be affirmed.

---

1. El Paso Water Impr. District No. 1 v. City of El Paso, 133 F.Supp. 894 to page 927, inclusive.

Of the opposite opinion as to those parts of the judgment complained of in plaintiffs' appeal,[2] we shall, in addition to declaring that these portions of the judgment may not stand, and that as to them the judgment must be reversed, state as briefly as possible our reasons for thinking so.

Further, since the appeal is from the judgment and not from the opinion, and it is our view that the decision of each of the questions raised by appellants' attack upon the judgment is governed by the written instruments the plaintiffs rely on, that it must be based upon the principles of law which govern their construction and application, we shall, though the opinion and the briefs took wider range, confine the discussion in our opinion within those limits.

■ Turning first to the matters having to do with bridges, and dealt with, in the court's opinion, 133 F.Supp. at pages 910 to 916, under the head "Franklin Canal", and 133 F.Supp. at pages 916 to 918 under the head "Bridges", and in Pars. III and VIII of the decree under the same head, and Par. IX "Money Judgments", we find ourselves in complete agreement with the opinion of the district judge, and with Par. III of his decree adjudicating, that the deed from the City conveying to the United States all of the City's right, title and interest in and to the right-of-way occupied by the Franklin Canal, along and across the streets, alleys, and other public lands of the City of El Paso, is valid and binding upon both grantor and grantee.

■ We cannot, however, reconcile with this conclusion and decree, and, therefore, cannot agree with the further conclusion in the opinion under the head "Bridges" and in the adjudication in Par. VIII in the decree that the burden of maintenance in respect to bridges imposed by the contract [3] "includes any and all reasonable replacements, rebuilding, restoration, enlargement, reinforcement and repairs of said bridges which may be required to keep at the specified crossings bridges suitable and adequate for the present and future needs of all common traffic at each of said locations, whatever the growth in such traffic density over the years". Neither can we reconcile them with the conclusion that the obligation extends to two new bridges constructed by the City at Piedras and Verde Streets, respectively, or with the provision in the decree under the head of "Money Judgments", adjudging that the plaintiff district is

2. While the brief for all of the appellants, except the United States, presents 14, and that of the United States presents 11 specifications of error, the only provisions of the judgment under attack are those declaring:

(1) That plaintiffs, United States and the District, failed to perform their bridge maintenance obligations at the Piedras and Verde Street crossings of the canal, but "the governing contingency bars primary liability of the plaintiff United States * * *, wherefore the secondary liability of the District is in effect", and accordingly the defendant city is awarded judgment in the total sum, including interest of $44,053.95, for expenses incurred by it in placing reasonably adequate bridges over the canal at those streets.

(2) That the obligation to "maintain" bridges at certain points includes the obligation to rebuild and replace such bridges though in a good state of repair.

(3) That El Paso County Water Improvement District No. 1 is liable to City of El Paso for cost of replacing bridges of different structural design.

(4) That the City of El Paso may take "pay free" from the Rio Grande an equivalent of the amount of sewage effluent voluntarily dumped into the river by it.

3. In these terms: "This conveyance is subject to the condition that the United States shall be obligated to maintain the said bridges at the said described crossings contingent, however, upon appropriations being made therefor by congress, and there is further reserved to the said City of El Paso the right to construct and maintain at its own cost and expense such additional bridges and other structures across said canal other than those hereinabove designated as it may deem necessary". El Paso County Water Impr. Dist. No. 1 v. City of El Paso, 133 F.Supp. at page 917.

liable for $44,053.95 expenses incurred by the City therefor.

It seems to us that, with nothing in the record upon which to base such a finding, the district judge has in effect found that the United States and the District assumed a potential liability of incalculable and undeterminable extent and amount.

The briefs of the parties cite and argue decisions construing the word "maintain" in various contexts. While it seems to us that appellants have far the better of that kind of argument, we are of the opinion that the case is not one which requires or permits of resort to interpretation or construction, but one in which the plain and simple language of the deed under the undisputed facts compel the rejection out of hand of the construction given by the court to the language and the reversal of those portions of the decree which declare the obligation and its breach and impose a money judgment therefor.

The trial court, in his opinion, recognizing the dictionary meaning of the word "maintain", declared:

"The word 'maintain' when directed to the subject of some structure, ordinarily means to keep it in repair and in virtually the same serviceable state. At the same time, the words should not be made a prisoner of any strait-jacket out of the dictionary." 133 F.Supp. 917.

We think with appellants that this is an expressive figure of speech. We think, though, that in context it is no more expressive and no more accurate than was that used by that master philologist, Humpty Dumpty in his asseveration to Alice that words should be one's servants, not one's masters, and that when he used a word he expected it to mean what he chose it to mean. We agree with appellants also that it is not supported by either Texas decisions or decisions generally. Cf. Malone v. El Paso County, Water Imp. Dist., etc., Tex.Civ.App., 20 S.W.2d 815, 820, in which the Court of Appeals said, "The term 'maintain' in

Webster's International Dictionary, which has become, in effect, a law book on questions, is defined to mean 'to hold or keep in any particular state or condition;' 'to support;' 'to sustain;' 'to uphold;' 'to keep up;' * * *". Cf. also Hobby v. Hodges, 10 Cir., 215 F.2d 754.

Applying these principles to the word "maintain" used in the deed under which the United States holds, it is quite plain that, in its common acceptance, it simply did not mean anything like what the court held that it did. The distinction between construction and maintenance was recognized by the City of El Paso in the deed itself when it reserved the right to *construct* and *maintain* at its own cost "additional bridges across the canal at other points".

With all deference to the conscientious and able district judge, we are of the firm opinion that he entirely lost sight not only of the definitive language consciously used in the deed but of the circumstances under which the deed and contract were made when he held that the clear and simple language of the deed, which referring to the 31 bridges named declares the obligation of the United States with respect to them to be to *maintain* those bridges, "imposes an obligation *to build from time to time new bridges of an entirely different construction and design to keep pace with changing traffic conditions.*" (Emphasis supplied.)

Having held that the contract does not impose a liability for the construction of bridges of the kind in question here or for payment for those already constructed, and that the adjudications in Par. VIII under the head of "Bridges" and in Par. IX of "Money Judgments", must be reversed, it is unnecessary for us to determine or even to consider appellant's contention that even if the United States did make itself liable, as claimed by the city, the district could not be held liable therefor, secondarily or otherwise.

When we come to the question of the "sewage effluent,"[4] we find the district judge rejecting, as without material bearing on it, both the contract of August 10, 1949, and the compromise settlement of the contest over the City's application to the Texas Board of Water Engineers for a permit.

Having thus put aside as of no weight, and denied effect to, matters of contract which seem to us controlling, the district judge, declaring:

> "The fair and equitable rule is that the City for the foreseeable future should be entitled to make direct diversions for municipal use from the river, without having to pay for such water so long as such diversions are less in volume than the outfall to the river."

stated: "The City has no traditional riparian right to exercise, but it is located on the river, with many miles of river frontage, * * * so there is no strain of equity in saying" that it must be regarded as in as good a position as one who, having no water rights, takes water, is yet not held liable for so taking it to persons who are unable to demonstrate any substantial or tangible injury therefrom.

Appellants, joining issue with these views, point out that the City has never been a part of the Rio Grande Project; that it has never, since the project was established had any but a contract right with that project to take water from the Rio Grande; and that the permit of May 10, 1950, issued by the Texas Board of Water Engineers, to be applied to the waters if any in that area over which it may have jurisdiction, does not in terms or by inference purport to authorize *the City to take from the Project waters the equivalent of sewage dumped into it.* So pointing they insist that, under the circumstances, the City, in the absence of a contract authorizing it to do so, cannot lawfully take project water *which, by the*

*express agreement of the city, the sewage effluent is when it reaches the river, while it is still under control of the Bureau of Reclamation;* that for an even stronger and better reason, the contract of August 10, 1949, definitely determines that the defendant has no such right; and that, in holding merely that this contract was valid in its aspects as rental of project facilities and not holding that it was valid in all respects, the court erred.

■ We agree with the appellants and think that a brief reference to some of the provisions of the contract and the circumstances under which it was executed, will conclusively demonstrate the correctness of their claims.

Among the provisions of the contract are these:

> "Whereas, there has been appropriated under the laws of New Mexico and Texas, for and on behalf of the Rio Grande Federal Irrigation Project, comprising lands of the district and the Elephant Butte Irrigaion District * * * and the *district claims all such appropriations cover all of the appropriable Waters of the Rio Grande River for the irrigation of lands in said districts;* and

> "Whereas, the city has urged a claim in equity against the project for sewage effluent placed in the river from the city's operation of its sewage and water systems * * *; and

> "Whereas, *it is the desire of the district and of the city to cooperate to the end of avoiding controversy and litigation between themselves and to settle and compromise their respective claims involving relative rights and priorities* of the use of the waters hereinabove referred to, * * *;

> "Now, therefore, it is agreed: (1) that the district, subject to approval

---

4. This is dealt with directly in the opinion of the district court under that head at pp. 925–926, and indirectly under the head of "Contract of Aug. 10, 1949" on pages 922–924 of the opinion, and in the decree under Par. IV "Contracts" and Par. VI "Effluent Offset".

hereof by the Secretary of the Interior of the United States, will permit use, by the City, of Rio Grande Project Works serving the district lands for the purpose of its agreement * * * *all as determined by the Project manager of the Rio Grande Project."* (Emphasis suplied.)

Par. 2 gives the city the right, under stated conditions to take from the river, water in excess of Projects needs. Par. 7 fixes the consideration the city is to pay, and Par. 10, reciting that the city is now discharging and may in future discharge sewage effluent, goes on to provide:

"It is expressly understood that in executing this contract or accepting the benefits thereof, the city shall not be held to have anywise *relinquished, modified, or impaired its title to, or ownership of, the right to control and determine the use and disposition of such effluent prior to its discharge into the Rio Grande. It is further understood that if such effluent is discharged into the Rio Grande, it constitutes a part of the Project water supply."* (Emphasis supplied.)

In the light of these provisions of the contract and of the further facts noted in the opinion of the court: that "the contest over the defendant's application for a permit did not come to a showdown"; and that "under the contract in question the protestants withdrew their opposition, and defendant was left free to prosecute its application to a conclusion, but with the reservation that any permit would be 'subject to the terms and conditions of this undertaking'"; it seems entirely clear to us that the contract binds the city against, and prevents, the assertion of, the claim it now makes.

██ Apparently of the opinion that the settlement was not binding because, as he states, the district had nothing to sell except the use of its project facilities, the district judge seems to have gone off on the theory that the contract was lack-

ing in mutuality and was not supported by consideration. In so holding, we think it plain that he erred. It is too well settled to require much citation of authority that a bona fide contest furnishes adequate consideration for a contract of settlement. United States v. Westside Irrigation Co., D.C., 230 F. 284. Texas law is firmly established that valuable consideration for a contract is either benefit to the promisor or detriment to the promisee, or a surrender by the promisee of some legal right. An inspection of the various provisions and paragraphs of the contract of August 10, 1949, discloses full and adequate consideration to support all of its undertakings and obligations, and, in addition, after its execution, the City of El Paso recognized the contract of August 10, 1949, as binding on it and accepted the benefits conferred thereby.

Further, on the first day of December, 1949, there was a written contract entered into between the City, the District, the United States, the Department of the Interior, the Rio Grande Project, and others, and filed in a proceeding before the Board of Water Engineers in which it was agreed that the contract of August 10, 1949, had been executed, that it became effective as of September 23, 1949, that it now stands as a valid and binding contract between the City of El Paso, applicant herein, and the Water District, and that said contract is now in full force and effect.

It is established without dispute: that plaintiff district and the others withdrew their protests against the application of the city for a permit under a stipulation that the board should grant the city's application, subject to the terms and conditions of the contract of August 10, 1949; and that after the Board of Water Engineers on May 8, 1950, had issued to the City a permit based on its application, purporting to authorize it to divert from the river, under stated conditions, a certain quantity of the public water of the State of Texas, the City of El Paso and the El Paso District in writing, dated June 22,

1950, again agreed with each other that the permit was subject to the contract of August 10, 1949, which it was further agreed was still in effect.

While the defendant in its brief, urges in opposition to these views that it is equitably entitled to take from the river as much as it puts into it, citing Texas Co. v. Burkett, 117 Tex. 16, 296 S.W. 273, 54 A.L.R. 1397, and Humphreys-Mexia Co. v. Arseneaux, 116 Tex. 603, 297 S.W. 225, 53 A.L.R. 1147, it also denies that the contract of August 10, or any of the contracts has any valid bearing in the case.

We do not think there is any sound basis for either of these positions, and we are in no doubt that the complained of provisions of the decree were erroneous and must be reversed.

The decree appealed from will be affirmed as to all of cross-appellant's claims against it. As to appellants' claims against it, it is reformed in accordance herewith, and, as reformed, it is affirmed.

On Petition for Rehearing.

PER CURIAM.

It is ordered that the petition for rehearing in the above entitled and numbered cause be, and it is hereby

Denied.

CAMERON, Circuit Judge (dissenting).

Upon reading again the opinion of the Trial Judge, as reported in 133 F.Supp. at pages 894–927, I am impressed anew with the fact that the case was skilfully handled and properly decided in the Court below by a Judge who spent much time in its trial, much study in mastering the intricate questions of mixed law and fact involved, and who brought to its decision much wisdom based upon long experience with those problems and an intimate knowledge of the local conditions involved in their solution. I find myself unable to subscribe to a conclusion at war with those upon which the judgment of the Court below was entered.

I would grant the petition for rehearing, set aside the order entered pursuant to the opinion of this Court filed April 2, 1957, and would enter a judgment affirming *in toto* that of the Court below. I dissent, therefore, from the order denying the petition for rehearing.