Anthony ARREDONDO, et al., Appellants/Cross–Appellees,

v.

The CITY OF DALLAS, Texas, Appellee/Cross–Appellant.

No. 05–99–01819–CV.

Court of Appeals of Texas, Dallas.

June 4, 2002.

Bill Boyd, Boyd & Veigel, P.C., McKinney, for Appellant.

James B. Pinson, Office of City Attorney, Dallas, for Appellee.

Before Justices KINKEADE, MOSELEY, and FITZGERALD.

## OPINION

Opinion By Justice FITZGERALD.

Anthony Arredondo, et al. (Plaintiffs),[1] and the City of Dallas, Texas, appeal the trial court's summary judgment granting Plaintiffs unpaid back wages pursuant to a 1979 ordinance that constituted part of Plaintiffs' employment contract with the City. Plaintiffs bring one point of error contending the trial court failed to award them sufficient back wages. The City brings nine cross points contending the trial court erred in rendering summary judgment for Plaintiffs because the ordinance is ambiguous and because Plaintiffs failed to establish as a matter of law the amount of back wages to which they are entitled. The City also contends the trial court erred in severing Plaintiffs' claims from those of the remaining 808 firefighters who brought identical claims against the City. We conclude the trial court did not abuse its discretion in granting the severance. We further conclude the ordinance is ambiguous. We reverse the trial court's judgment and remand the cause to the trial court for further proceedings.

## FACTUAL AND PROCEDURAL BACKGROUND

On September 8, 1978, the Dallas Police and Fire Action Committee presented the City with a signed petition seeking an ordinance for the purpose of: (1) obtaining a pay increase effective October 1, 1978 for City sworn police officers and firefighters equal to no less than fifteen percent of the October 1, 1977 base salary of a third-year officer; (2) maintaining the "current percentage pay differential between grades in the sworn ranks" of police officers and firefighters; and (3) maintaining salary and benefits at levels not less than those in effect in October 1977.[2] The City Secretary approved the petition and submitted it to the City Council. Under the City Charter, the City Council had two choices:

---

1. Plaintiffs in this case are: Anthony Arredondo, Charles S. Swaner, Joseph M. Betzel, James M. Stovall, Lisa M. Clayton, Kenneth L. Foreman, Elmer J. Davis, Jace P. Sepulvado, Brian Caton, Robert L. Rogers, Tim Q. Rose, George J. Tomasovic, James M. Craft, Jr., David T. Chase, Howard R. Russell, and Danny Watson.

2. The text of the ordinance sought and subsequently approved was:
   Be it ordained that: (1) From and after October 1, 1978, each sworn police officer and fire fighter and rescue officer employed by the City of Dallas, shall receive a raise in salary in an amount equal to not less than 15% of the base salary of a City of Dallas sworn police officer or fire fighter and rescue officer with three years service computed on the pay level in effect for sworn police officers and fire fighter and rescue officers of the City of Dallas with three years service in effect in the fiscal year beginning October, 1977; (2) The current percentage pay differential between grades in the sworn ranks of the Dallas Police Force and the Fire Fighter and Rescue Force shall be maintained; and (3) Employment benefits and assignment pay shall be maintained at levels of not less than those in effect for the fiscal year beginning October, 1977.

it could either pass the ordinance embodied in the petition without alteration or call a special election submitting the ordinance to a vote of the people. *See* DALLAS, TEX., CHARTER ch. XVIII, § 13. The City Council decided to call a special election on January 20, 1979 to submit the ordinance to a vote of the people. Before the election, the City passed a resolution concerning the pay scale of the fire department. Resolution 78–2735,[3] passed September 27, 1978 and effective October 1, 1978, established a new pay scale for the City's employees, including police and fire department personnel. At the January 20, 1979 special election, the voters approved the referendum.

On January 22, 1979, the City Council adopted the ordinance approved by the voters in Ordinance 16084 (the Ordinance).[4] *See* Dallas, Tex., Ordinance 16,-084 (Jan. 22, 1979). On January 24, 1979, the City Council passed Resolution 79–0348, purporting to implement the Ordinance.[5] To implement the pay scale

---

**3.** Resolution 78–2735 provided:

September 27, 1978

WHEREAS, the City Council of the City of Dallas has adopted a budget for the year beginning October 1, 1978, and,

WHEREAS, the budget adopted is predicated upon approved summary position allocations, and,

WHEREAS, it is necessary to authorize the specific positions which constitute these position allocations; Now, Therefore,

BE IT RESOLVED BY THE CITY COUNCIL OF THE CITY OF DALLAS:

SECTION 1. That the attached Salary Schedules I, IA, and ID, reflecting a pay adjustment of 3% increase for all positions listed, be approved effective October 1, 1978;

That the attached Schedule IC, reflecting a pay adjustment of 5% increase for all positions listed, be approved effective October 1, 1978;

That the attached Schedule IB, reflecting a pay adjustment of 5% increase for all positions listed except 6% for employees in Step 7, be approved effective October 1, 1978;

That the attached Schedule IE, establishing new rates for the Physicians, be approved effective October 1, 1978;

That the attached Schedules II and IIA reflecting alphabetical and numerical classification titles be approved as listed effective October 1, 1978;

That the attached Schedule III, reflecting a pay adjustment of 5 1/2% increase, plus certain other adjustments, be approved effective October 1, 1978, but that operation of the merit steps 4 and 5 in this schedule be deferred pending results of the police and fire salary referendum;

That the attached Schedule IV, reflecting pay adjustments of up to 3% increase for selected positions listed, be approved effective October 1, 1978;

That the attached Schedule V, reflecting a pay adjustment of 3% up to 5% increase, plus certain other adjustments, be approved effective October 1, 1978;

That Classifications not on the above schedules be paid at rates previously authorized by the City Council.

SECTION 2. That the departmental position allocations according to the attached schedules be approved effective October 1, 1978, and continuing through September 30, 1979, unless otherwise specified in the attached Schedule.

SECTION 3. That rates of pay shall be as specified in the Salary Schedules approved by the City Council.

SECTION 4. That the City Manager is authorized to transfer positions between accounts within departments of the General Fund and between accounts within other funds.

SECTION 5. That this resolution shall take effect immediately from and after its passage in accordance with the provisions of the Charter of the City of Dallas and it is accordingly so resolved.

**4.** Under the City Charter, the Ordinance became effective immediately after the election, and the City could not repeal the Ordinance except through a vote of the people approving the repeal. *See* DALLAS, TEX., CHARTER ch. XVII, § 14.

**5.** Resolution 79–0348 provided:

January 24, 1979

provisions mandated by the Ordinance, Resolution 79–0348 rescinded the pay scale established in Resolution 78–2735. Resolution 79–0348 established a pay scale maintaining the percentage pay differential in effect during fiscal year October 1977–78 between the ranks of police officers and firefighters at the rank of Deputy Chief and below and giving each rank a fifteen percent pay raise. On January 31, 1979, the City Council passed Resolution 79–0434, which recognized the need to give "the Assistant Police Chiefs, Assistant Fire Chiefs, Chief of Police, and Fire Chief" a raise "to maintain the percentage of pay differential between these grades and other grades in the sworn ranks," and the resolution approved new salary rates for the police and fire chiefs and assistant chiefs.[6]

WHEREAS, the City Council approved position allocations and salary schedules for sworn members of the Police and Fire Departments, specifically in Resolution No. 78–2735 dated September 27, 1978, and Phase II in Resolution No. 78–3567 dated December 20, 1978; and,

WHEREAS, pursuant to Chapter XVIII, Section 13, Dallas City Charter, a special election was held on January 20, 1979, at which the voters approved an ordinance which authorized a raise in salary in an amount equal to not less than 15% of the base salary of a City of Dallas police officer or fire fighter and rescue officer with three years service computed on the pay level for police officers, fire fighters, and rescue officers with three years service in effect in the fiscal year beginning October 1, 1977, and further providing that the current percentage of pay differential between grades in the sworn ranks shall be maintained; and,

WHEREAS, the attached Salary Schedule III implements the ordinance approved at the special election; and,

WHEREAS, it is necessary to void and rescind the September 27, 1978, Salary Schedule III—Position Classification and Salary—Police and Fire Department and Resolution No. 78–3567 Dated December 20, 1978, as a result of the approval of the above-described ordinance at the special election; Now, Therefore,

BE IT RESOLVED BY THE CITY COUNCIL OF THE CITY OF DALLAS:

SECTION 1. That Salary Schedule III—Position Classification and Salary—Police and Fire Department as approved in Resolution No. 78–2735 dated September 17, 1978 and Resolution No. 78–3567 dated December 20, 1978, be and are hereby rescinded and voided.

SECTION 2. That the attached Salary Schedule III be and is hereby approved.

SECTION 3. That the City Manager is hereby authorized to implement the provisions of the ordinance approved at said special election.

SECTION 4. That the City Manager is hereby authorized to increase the appropriation in General Fund 100001, Org. 1996—Salary and Benefit Reserve, Account 3981 by $3,911,000.00, and decrease the balance in the General fund 100001, Emergency Reserve, Account 0778 by a like amount.

SECTION 5. That all other provisions contained in Resolution No. 78–2735 dated September 27, 1978, not amended or rescinded shall remain in effect.

SECTION 6. That this resolution shall take effect immediately from and after its passage in accordance with the provisions of the Charger of the City of Dallas and it is accordingly so resolved.

6. Resolution 79–0434 provided:

WHEREAS, the City Council approved position allocations and salary schedules for the City of Dallas, specifically in Resolution No. 78–2735 dated September 27, 1978, and Phase II in Resolution No. 78–3656 dated December 20, 1978; and,

WHEREAS, pursuant to Chapter XVIII, Section 13, Dallas City Charter, a special election was held on January 20, 1979, at which the voters approved an ordinance which authorized a rise in salary in an amount equal to not less than 15% of the base salary of a City of Dallas police officer or fire fighter and rescue officer with three years service computed on the pay level for police officers, fire fighters, and rescue officers with three years service in effect in the fiscal year beginning October 1, 1977, and further providing that the current percentage of pay differential between grades in the sworn ranks shall be maintained; and,

WHEREAS, it is necessary to adopt salaries for the Assistant Police Chiefs, Assistant

In the succeeding years, the City raised the salary of all firefighters through the annual pay resolutions. Over time, however, the Fire Chief's salary crept higher in relation to the salary of the other firefighters. By October 1, 1994, the percentage pay differential between the Fire Chief's pay and the pay of the other firefighters was twelve to fifteen percentage points higher than it had been in 1979.

On June 30, 1994, more than eight hundred present and former members of the sworn ranks of the Dallas Fire Department sued the City of Dallas. The firefighters interpreted the phrase "[t]he current percentage pay differential between grades ... shall be maintained" as requiring the City to keep the 1979 percentage pay differential in all subsequent pay resolutions. They alleged the City had failed to maintain the percentage pay differential because the Fire Chief earned proportionally more than they did compared to 1979. The firefighters sought back wages for the higher salaries they would have received had the City maintained the percentage differential between their pay and the Fire Chief's pay. The firefighters also sought a declaration that the beginning base salaries for the grades of Battalion Chief and below do not comply with the Ordinance and a declaration establishing the base salary for those grades for the City to be in compliance with the Ordinance. The firefighters also sought attorney's fees under section 37.009 of the civil practice and remedies code for their declaratory judgment action and under section 38.001 of the civil practice and remedies code for their breach of contract claims. *See* TEX.

CIV. PRAC. & REM.CODE ANN. §§ 37.009, 38.001 (Vernon 1997).

On June 7, 1995, the City filed a counterclaim seeking a declaratory judgment that the Ordinance merely prohibited the City from decreasing the percentage pay differential between grades but did not prohibit the City from increasing the differential. The City also sought declarations that if all of the resolutions authorizing payment of salary after October 1, 1978 to the sworn ranks of the fire fighter and rescue officers failed to comply with the Ordinance, then those resolutions were ultra vires and void. The City alleged that if the resolutions authorizing payment of salary to the firefighters were void, then the salaries paid to the firefighters after October 1, 1978 were an illegal donation of public funds, and the City sought to recover all of the amounts paid to the firefighters as salary after October 1, 1978 to the extent they exceeded the salaries authorized under Resolution 78–2735 or Resolutions 79–0348 and 79–0434.

On April 10, 1995, Plaintiffs, who are sixteen of the firefighters suing the City, moved for partial summary judgment on the issues of liability for back pay and declaratory relief. On June 7, 1995, the City filed a motion for summary judgment seeking dismissal of Plaintiffs' claims because they waived the claims, ratified them, or were estopped from asserting them by accepting salary benefits under the resolutions passed after January 20, 1979. The City also asserted that the legislature had validated the City's acts. The City also requested judgment against

Fire Chiefs, Chief of Police and Fire Chief to maintain the percentage of pay differential between these grades and other grades in the sworn ranks; Now, Therefore,
SECTION 1. That the following salary rates are approved retroactive to October 1, 1978:

[Setting out the salary rates for the fire and police chiefs and assistant chiefs]
SECTION 2. That this resolution shall take effect immediately from and after its passage in accordance with the provisions of the Charter of the City of Dallas and it is accordingly so resolved.

Plaintiffs for the gross salary paid them to the extent it exceeded the salaries authorized under Resolution 78–2735 or Resolutions 79–0348 and 79–0434.

On December 4, 1995, the trial court entered an order stating the court "finds and declares that there is no genuine issue as to the material fact that the City of Dallas has failed to maintain the percentage pay differentials between grades in the sworn ranks of the fire fighter and rescue force as those differentials existed on October 1, 1978." The court overruled Plaintiffs' motion in all other respects. The December 4, 1995 order did not reference the City's motion for summary judgment.

The parties stipulated on June 18, 1996, to the base pay of the Fire Chief on January 22, 1979, the base pay of the different grades of the other firefighters under Resolutions 78–2735 and 79–0348, and the percentage difference between the Fire Chief's base pay and each of the other levels of firefighters' base pay under Resolutions 78–2735 and 79–0348. The parties also stipulated to the base pay of the Fire Chief and to the base pay of each grade of the other firefighters from 1989 through 1995.

On October 11, 1996, Plaintiffs filed their first supplemental motion for partial summary judgment. This motion asserted the fact that the Fire Chief had received proportionally higher pay raises since 1979 than the lower ranks of the fire department. Plaintiffs relied on the stipulations and other evidence and prayed the trial court to adjudge the City liable for back pay from 1990, based on the percentage pay differential established by Resolution 79–0348. On January 9, 1997, the City filed its motion for summary judgment asserting that it was entitled to summary judgment on its affirmative defenses. The City also argued that if its affirmative defenses did not bar Plaintiffs' suit, then

the evidence shows the salary paid to Plaintiffs was illegal, and the City is entitled to judgment for all salary paid to Plaintiffs exceeding the amount authorized by Resolution 78–2735 or Resolutions 79–0348 and 79–0434, plus interest.

On August 1, 1997, the trial court ruled on the October 11, 1996 and January 9, 1997 motions for summary judgment by granting Plaintiffs' motion in part and denying the City's motion. The trial court concluded:

> The City had failed to maintain the percentage pay differential between the grades in the sworn ranks of the fire department as those differentials existed on October 1, 1978;

> The percentage pay differential in effect on January 20, 1979 was established by Resolution 78–2735;

> Ordinance 16084 implemented the requirements of the special referendum election of January 20, 1979;

> Resolution 79–0348 failed to maintain the percentage pay differentials;

> From January 24, 1979 to the present, the City has failed to maintain the percentage pay differentials between the grades in the sworn ranks of the fire department as they existed on January 20, 1979.

The trial court also rendered declaratory judgment that:

> The City has a legal obligation to each Plaintiff to comply with the requirements of Ordinance 16084 by maintaining the percentage pay differential between the grades in the sworn ranks of the fire department.

> The City is required by law to bring itself into compliance with Ordinance 16084 for past failure to maintain the percentage pay differential and to insure that the differentials are maintained in the future. The City has

some discretion to decide what action it should take to satisfy this legal obligation.

The City should be given a reasonable time to resolve its past failure to maintain the differentials and to insure that the differentials are maintained in the future. Thus, the cause was not ready for resolution and should be abated.

The trial court also declared the City had no obligation to resolve the effects of its failure to maintain the percentage pay differential before June 30, 1990. The court declared that it lacked the power at that time to redraft the City's resolutions for establishing the salaries for the fire department and that the City could comply by increasing or decreasing any or all salaries in the fire department or by taking some other action to bring the City· into compliance with the Ordinance and Resolution 78–02735. The trial court then abated the cause until further order.

On January 20, 1998, five-and-a-half months after the trial court abated the cause, Plaintiffs moved to lift the abatement order, asserting that the City had done nothing in the meantime to comply with the Ordinance and Resolution 78–2735. On March 10, 1998, the trial court ordered the abatement lifted and the cause reinstated. On September 16, 1998, the City moved for summary judgment on Plaintiffs' claims, and on January 27, 1999, Plaintiffs moved for summary judgment on their claims. The parties presented essen-

tially the same arguments on Plaintiffs' claims as in their previous motions. Neither motion expressly moved for summary judgment on the City's counterclaim for excessive wages paid Plaintiffs since October 1, 1978.

On May 26, 1999, the trial court determined that the City had been given a reasonable time to comply with the Ordinance and Resolution 78–2735 but had failed to do so and that no genuine issue of fact remained. The trial court rendered judgment that the City was liable for back pay to each Plaintiff. The court then rendered a take nothing judgment on the City's counterclaim because, "by the granting of Plaintiffs' Motion, the counterclaim filed herein by the City against the 16 Plaintiffs has been wholly negated, and a take-nothing judgment should be entered against the City on said counterclaim."

On October 19, 1999, the Dallas Police and Fire Pension System intervened, alleging the City owed it twenty-seven and one-half percent of the amount of back pay awarded to Plaintiffs and that the City was required to withhold for the Pension System six and one-half percent to eight and one-half percent of the back pay awarded Plaintiffs.

On October 20, 1999, the trial court severed Plaintiffs' and the City's claims from those of the Pension System and the remaining 808 firefighters. This order became the final judgment.[7]

7. The May 26, 1999 summary judgment order and the October 20, 1999 severance order do not expressly dispose of Plaintiffs' claim for attorney's fees. However, the trial court states in the severance order,

> IT IS FURTHER ORDERED that, upon the court's signing of this Order, the Order Granting Partial Summary Judgment dated May 26, 1999 will become the final order in the Severed Cause.

> The Court finds that, because of the severance ordered herein, all issues and matters between Movants and the City have been decided, and that this Order constitutes a final judgment in the Severed Cause.

The mere inclusion of the word "final" in the order does not make it final. *See Lehmann v. Har–Con Corp.,* 39 S.W.3d 191, 205 (Tex. 2001). "Rather, there must be some other clear indication that the trial court intended the order to completely dispose of the entire

## ISSUES ON APPEAL

Both Plaintiffs and the City appeal the trial court's judgment. Plaintiffs bring one point of error contending the trial court erred by using the percentage pay differential established by Resolution 78–2735 to calculate Plaintiffs' damages; they assert the trial court should have used Resolution 79–0348 to determine the current percentage pay differential.

The City brings nine cross points of error. The first cross point challenges the City's liability for any damages by contending the Ordinance is patently ambiguous concerning whether the duty to "maintain" the current percentage pay differential applies only to the calculation of the raise required by clause 1 of the Ordinance or whether it applies to all subsequent pay resolutions as Plaintiffs assert and the trial court held. The second cross point contends Plaintiffs' interpretation of the Ordinance would violate Article 1269q of the Texas Revised Civil Statutes.[8] The City's third through sixth and eighth and ninth cross points contend that if the City is liable to Plaintiffs, then Plaintiffs did not prove as a matter of law the amount of damages awarded by the trial court. The City's seventh point of error contends that the trial court erred by granting Plaintiffs' motion for severance. Because the issue of the propriety of the severance raises jurisdictional considerations, we address it first.

## SEVERANCE

◼ The City contends the trial court abused its discretion by granting Plaintiffs'

motion for severance. Rule 41 of the Texas Rules of Civil Procedure provides "[a]ny claim against a party may be severed and proceeded with separately." Tex.R. Civ. P. 41. A claim may be properly severed if it is part of a controversy involving more than one cause of action; the trial judge is given broad discretion in the manner of severance and consolidation of causes. *Cherokee Water Co. v. Forderhause*, 641 S.W.2d 522, 526 (Tex.1982); *see also Guar. Fed. Sav. Bank v. Horseshoe Operating Co.*, 793 S.W.2d 652, 658 (Tex.1990). Although the trial court need not sever an interlocutory summary judgment, it has broad discretion in determining whether to grant a severance. *Guidry v. Nat'l Freight, Inc.*, 944 S.W.2d 807, 812 (Tex. App.-Austin 1997, no writ). If summary judgment in favor of one defendant is proper in a case with multiple defendants, severance of that claim is proper so it can be appealed. *Id.* (citing *Cherokee*, 641 S.W.2d at 526); *see also Cooke v. Maxam Tool and Supply, Inc.*, 854 S.W.2d 136 (Tex.App.-Houston [14th Dist.] 1993, writ denied) (noting that in *Cherokee*, supreme court found severance of summary judgment in similar circumstances was not an abuse of discretion, court likewise held severance of summary judgments from remaining case not abuse of discretion). We conclude the trial court did not err in granting Plaintiffs' motion for severance.

## SUMMARY JUDGMENT

◼ We review a summary judgment de novo. *Reynosa v. Huff*, 21 S.W.3d 510, 512 (Tex.App.-San Antonio 2000, no pet.);

---

case." *Id.* The above-quoted language in the severance order meets this requirement. Plaintiffs do not complain on appeal of the trial court's failure to award attorney's fees.

8. *See* Tex.Rev.Civ. Stat. Ann. art. 1269q (repealed). Act of May 15, 1973, 63d Leg., R.S., ch. 218, § 1, 1973 Tex. Gen. Laws 506, 506–

07, *repealed by* Act of May, 1, 1987, 70th Leg., R.S., ch. 149, § 49, 1987 Tex. Gen. Laws, 707, 1307 (now codified at Tex. Local Gov't Code Ann. § 141.034(d) (Vernon 1999)). This state statute provided a means for police and firefighters to obtain a salary raise through a petition and referendum procedure.

*Dickey v. Club Corp. of Am.*, 12 S.W.3d 172, 175 (Tex.App.-Dallas 2000, pet. denied). The standards for reviewing a traditional summary judgment are well established. *See Sysco Food Servs., Inc. v. Trapnell*, 890 S.W.2d 796, 800 (Tex.1994); *Nixon v. Mr. Prop. Mgmt. Co.*, 690 S.W.2d 546, 548–49 (Tex.1985). In deciding whether there is a fact issue raised to preclude summary judgment, we accept all evidence favorable to the nonmovant as true, indulge the nonmovant with every favorable reasonable inference, and resolve any doubt in the nonmovant's favor. *Nixon*, 690 S.W.2d at 548–49. We disregard all conflicts in the evidence and accept as true all evidence supporting the nonmovant. *See Fought v. Solce*, 821 S.W.2d 218, 219 (Tex.App.-Houston [1st Dist.] 1991, writ denied). All doubts as to the existence of a genuine issue of material fact are resolved against the movant. *See id.* (citing *Great Am. Reserve Ins. Co. v. San Antonio Plumbing Supply Co.*, 391 S.W.2d 41, 47 (Tex.1965)).

### Ambiguity

▊ In its first cross point, the City contends that summary judgment is inappropriate in this case because the Ordinance is patently ambiguous. Whether a contract is ambiguous is a question of law for the court to decide. *Friendswood Dev. Co. v. McDade & Co.*, 926 S.W.2d 280, 282 (Tex.1996). If a contract can be given a definite or certain legal meaning or interpretation, then it is not ambiguous. *Id.;*

*Coker v. Coker*, 650 S.W.2d 391, 393 (Tex. 1983). If, however, the contract is reasonably susceptible to more than one meaning, it is ambiguous. *Coker*, 650 S.W.2d at 393.

▊ A contract ambiguity may be either patent or latent. A patent ambiguity is one evident on the face of the contract, while a latent ambiguity exists when a contract is unambiguous on its face, but fails because of some collateral matter that creates an ambiguity. *Nat'l Union Fire Ins. v. CBI Indus., Inc.*, 907 S.W.2d 517, 520 (Tex.1995) (example of latent ambiguity would be if contract called for goods to be delivered to "the green house on Pecan Street," but there were in fact two green houses on Pecan Street). The City argues on appeal that the ordinance is facially ambiguous, i.e., that it contains a patent ambiguity, and that in the context of the entire Ordinance, the meaning of the phrase "shall be maintained" is reasonably susceptible to more than one meaning.

▊ Plaintiffs argue that the City did not preserve the ambiguity argument it presents on appeal because the City neither pleaded it nor asserted it in response to Plaintiffs' motions for summary judgment.[9] Patent ambiguity of a contract may be considered for the first time on appeal from a motion for summary judgment. *See A.W. Wright & Assocs., P.C. v. Glover, Anderson, Chandler & Uzick, L.L.P.*, 993 S.W.2d 466, 470 n. 3 (Tex.App.-Houston [14th Dist.] 1999, pet. denied);

---

9. In its March 31, 1999 response to Plaintiffs' January 27, 1999 motion for partial summary judgment, the City stated, "as a matter of law, the terms of the alleged contract of employment between the Plaintiffs and the City are so vague and ambiguous as to be unenforceable." The City did not state in the response that the ambiguity concerned the interpretation of the words "shall maintain" in clause 2 of the Ordinance. In its June 9, 1995 response to Plaintiffs' April 10, 1995 motion for partial summary judgment, the City presented an alternative to Plaintiffs' interpretation of the Ordinance: the City asserted that the Ordinance, "properly construed, requires only that the percentage pay differentials between grades cannot be reduced, and does not prohibit an increase in the percentage pay differentials between grades." The City did not assert in its June 9, 1995 response the interpretation of the Ordinance it presents on appeal.

*see also Coker,* 650 S.W.2d at 394 (concluding contract was ambiguous even though parties affirmatively asserted it was unambiguous, and trial court and court of appeals agreed it was unambiguous); *Highlands Mgmt. Co. v. First Interstate Bank,* 956 S.W.2d 749, 752 n. 1 (Tex.App.-Houston [14th Dist.] 1997, pet. denied) (same); *cf. White v. Moore,* 760 S.W.2d 242, 243 (Tex.1988) (reversing summary judgment in will-contest case due to ambiguity in will even though parties agreed the will was unambiguous). Thus, under these circumstances, we may consider whether the contract is ambiguous. *See Sage St. Assocs. v. Northdale Constr. Co.,* 863 S.W.2d 438, 445 (Tex.1993) ("A court may conclude that a contract is ambiguous even in the absence of such a pleading by either party.") (citing *Coker,* 650 S.W.2d at 393, and *White,* 760 S.W.2d at 243).

▬▬ Ordinarily, if a contract is ambiguous, the ambiguity raises a fact question to be determined by a jury. *See, e.g., Columbia Gas Transmission Corp. v. New Ulm Gas, Ltd.,* 940 S.W.2d 587, 589 (Tex. 1996); *Reilly v. Rangers Mgmt., Inc.,* 727 S.W.2d 527, 529 (Tex.1987). If a statute is ambiguous, then it raises a legal issue, not a fact issue, to be determined by the court as a matter of law. *See, e.g., City of Garland v. Dallas Morning News,* 22 S.W.3d 351, 357 (Tex.2000) (generally, matters of statutory construction are legal questions). Before we reach the City's ambiguity argument, we determine whether the asserted ambiguity raises a factual question because the Ordinance is part of a contract or a legal question because the Ordinance is a statute.

We first note that in the December 14, 1998 Order Denying Defendant's Motion for Partial Summary Judgment, the trial court declared that "City Ordinance No. 16084 constitutes an implied part of each employment contract between the City and the members of the sworn ranks of the City's Fire Fighter & Rescue Force . . . ," and neither party disputes that the Ordinance constituted part of the City's contract with Plaintiffs.

Further, in *Fort Worth Independent School District v. City of Fort Worth,* 22 S.W.3d 831 (Tex.2000), the supreme court considered the situation of ambiguities in ordinances that constituted a contract between the city, the school district, and a telephone utility company. *See id.* at 845–46. The supreme court determined that the ambiguity in the contract created by the ordinances was a fact question. *See id.* at 846. In this case the City, through the voters, reached a contractual agreement with Plaintiffs regarding their pay. Applying *Fort Worth Independent School District,* any ambiguity in the Ordinance would be a fact issue because it is part of a contract. *See id.* Consequently, if the contract is ambiguous, then summary judgment is inappropriate because the contract's interpretation becomes a fact issue. *See Donahue v. Bowles, Troy, Donahue, Johnson, Inc.,* 949 S.W.2d 746, 753 (Tex. App.-Dallas 1997, writ denied).

The contractual provision at issue, the Ordinance, provides:

Be it ordained that:

(1) From and after October 1, 1978, each sworn police officer and fire fighter and rescue officer employed by the City of Dallas, shall receive a raise in salary in an amount equal to *not less than* 15% of the base salary of a City of Dallas sworn police officer or fire fighter and rescue officer with three years service computed on the pay level in effect for sworn police officers and fire fighter and rescue officers of the City of Dallas with three years service in ef-

fect in the fiscal year beginning October, 1977;

(2) The current percentage pay differential between grades in the sworn ranks of the Dallas Police Force and the Fire Fighter and Rescue Force *shall be maintained;* and

(3) Employment benefits and assignment pay shall be maintained at levels of not less than those in effect for the fiscal year beginning October, 1977.

(Emphasis added; reformatted for clarity.)

The parties differ in their interpretation of the word "maintain" in clause 2 of the Ordinance. The City argues the phrase "the current percentage pay differential ... shall be maintained" means that in calculating the exact amount of raise each grade of officer receives under the Ordinance, the City keeps the same percentage pay differential between the grades existing immediately before the Ordinance took effect. The City argues the word "maintain" is limited to a "one-time across-the-board salary increase." Plaintiffs argue the word "maintain" means both the continuation of the existing percentage pay differential in calculating the raise in clause 1 *and* that the percentage pay differential must be kept exactly the same in all future pay resolutions. Thus, the issue is the temporal limitation of the word "maintain" as used in the Ordinance.

Plaintiffs argue their interpretation is supported by the application of the word "maintain" in *Malone v. El Paso County Water Improvement District No. 1,* 20 S.W.2d 815 (Tex.Civ.App.-El Paso 1929, writ ref'd). That case concerned whether the Water Improvement District had properly maintained a canal. *Id.* at 820. The court concluded that permitting the canal "to become 'clogged with weeds, grass and other obstacles which impeded, blocked and retarded the proper flow of water,' would we think disclose an improper maintenance of the canal." *Id.* Clearly, this is a completely different usage of the word "maintain" and is irrelevant to the issue before us. Even if the use of the word "maintain" in *Malone* were applicable to clause 2 of the Ordinance, the case is still distinguishable because the contract in that case contained an express temporal limitation on the duty to "maintain" the canal: " 'The United States will so continue to operate and maintain said project works,' until the notice provided by the Reclamation Act is given." *Id.* Because clause 2 of the Ordinance contains no similar indication whether the word "maintain" is temporally limited, nothing in *Malone* mandates one interpretation of the word "maintain" over the other.

The issue before us is whether the phrase "shall be maintained" in the context of the entire Ordinance is reasonably susceptible to more than one meaning. Having analyzed both the City's and Plaintiffs' interpretations of the Ordinance, we conclude both are reasonable. Thus, the Ordinance is patently ambiguous.

Because the Ordinance constitutes a contract between the City and Plaintiffs, resolution of the ambiguity issue requires a determination by the fact-finder as to the intent of the parties to the contract, i.e., what the City and Plaintiffs thought the Ordinance meant, as evidenced by, among other things, their conduct and any information disseminated by them to the voters. Further, because in this instance the City was bound by the decision of the voters and in fact had no authority to change any language in the Ordinance as drafted by the Dallas Police and Fire Action Committee, the intent of the voters is also relevant in resolving the ambiguity. While we acknowledge that ascertaining the intent of the voters can be a difficult

task, it is not insurmountable. *See, e.g., State v. Allison,* 143 Or.App. 241, 923 P.2d 1224, 1230 (1996) (in interpreting statute enacted by initiative, court found following to be probative evidence of voter intent: statements contained in voters' pamphlets and contemporaneous newspaper stories, magazine articles, and other reports from which voters might have derived information about the initiative); *Arvin Union Sch. Dist. v. Ross,* 176 Cal.App.3d 189, 221 Cal.Rptr. 720, 725 (1985) (in interpreting measure adopted by vote of people, court will examine language of initiative "in light of the political and social milieu that existed at the time the [initiative] came before the voters").

We conclude the Ordinance, and thus the parties' contract, is reasonably susceptible to more than one meaning. The summary judgment evidence is not conclusive as to which interpretation the parties intended. The Ordinance is, therefore, patently ambiguous and the trial court erred in granting summary judgment. *See Fort Worth Indep. Sch. Dist.,* 22 S.W.3d at 845–46. We sustain the City's first cross point.

### Article 1269q

█ In its second cross point, the City contends (1) the Ordinance violates former Article 1269q of the Texas Revised Civil Statutes;[10] and (2) because it violates Article 1269q, the Ordinance also violates the Home Rule Amendment to the Texas Constitution. TEX. CONST. art. XI, § 5.

At the time of the election, Article 1269q provided that, in a city the size of Dallas, no other issue could be joined on the same ballot as a proposition to increase the salaries of the fire department and police department. *See* Act of May 15, 1973, 63d Leg., R.S., ch. 218, § 1, 1973 Tex. Gen. Laws 506, 507. The City argues that Plaintiffs' construction of the ordinance would violate this statute because clause 2 would constitute another issue impermissibly joined with the pay raise proposition. Further, the City contends because Plaintiffs' proposed construction would violate Texas law, it would also violate the Home Rule Amendment, which invalidates any provision of a home-rule ordinance that is "inconsistent with the Constitution of the State, or of the general laws enacted by the Legislature of this State." *Dallas Merch.'s & Concessionaire's Ass'n v. City of Dallas,* 852 S.W.2d 489, 490–91 (Tex. 1993) (quoting TEX. CONST. art. XI, § 5).

In its Amended Reply Brief of Cross Appellant, the City concedes it waived the constitutional argument made in this cross point by not asserting it in its response to Plaintiffs' motion for summary judgment. The City contends, however, that its argument that the Ordinance violated Article 1269q is not waived. Specifically, the City contends that because Plaintiffs' interpretation of clause 2 would violate Texas law, the only reasonable construction of the Ordinance that does not violate the law is their construction that clause 2 applies only to the pay raise set out in clause 1. According to the City, this argument is not a matter in avoidance that it was required to include in its response to the motion for summary judgment, but a reason why any

---

**10.** The text of 1269q was originally in section 1583–2 of the Texas Penal Code. *See* Act of May 15, 1973, 63d Leg., R.S., ch. 218, § 1, 1973 Tex. Gen. Laws 506, 506–07. In 1973, the text was transferred to article 1269q of the Texas Revised Civil Statutes. *See* Act of May 24, 1973, 63d Leg., R.S., ch. 399, § 5, 1973 Tex. Gen. Laws 883, 995, 996f. In 1987, the legislature repealed article 1269q and incorporated its provisions into the Texas Local Government Code. *See* TEX. LOCAL GOV'T CODE ANN. § 141.034 (Vernon 1999); Act of May 1, 1987, 70th Leg., R.S., ch. 149, § 49, 1987 Tex. Gen. Laws, 707, 1307 (repealing article 1269q).

ambiguity in the Ordinance should be resolved as a matter of law in its favor.

■ Assuming without deciding that the City did not waive this argument by failing to include it in its response to Plaintiffs' motion for summary judgment, the City's argument still fails. The City, by claiming Plaintiffs' construction of the ordinance would violate article 1269q, is challenging the validity of placing clause 2 on the 1979 election ballot. This argument is nothing more than a back-door attempt to contest the election more than twenty years after it was held. *See, e.g., Clary v. Hurst,* 104 Tex. 423, 138 S.W. 566, 571 (1911) (election contest embraces any type of suit in which validity of an election or any part of elective process is made subject matter of litigation). Under Texas law, an election contest must be filed within thirty days after the return date of the election; the thirty-day limit is jurisdictional and non-waivable. *Mitchell v. Carroll Indep. Sch. Dist.,* 435 S.W.2d 280 (Tex. Civ.App.-Fort Worth 1968, writ dism'd w.o.j.); *Walker v. Thetford,* 418 S.W.2d 276 (Tex.Civ.App.-Austin 1967, writ ref'd n.r.e.). It is undisputed the City did not file an election contest suit within thirty days of the return date of the referendum ballot. Thus, we cannot entertain the City's argument that clause 2 is invalid under Article 1269q.

### Remaining Cross Points

The City's third, fourth, fifth, eighth, and ninth cross points involve alleged errors in the trial court's damage award. Because we reverse the trial court's summary judgment for a factual determination of the meaning of the Ordinance, we need not address these issues. Further, because the trial court's disposition of the City's counterclaim was dependent on its interpretation of the Ordinance, we necessarily reverse the trial court's ruling on

the counterclaim and remand that issue to the trial court. We, therefore, need not address the City's sixth cross point complaining that the trial court granted more relief than requested by disposing of the City's counterclaim.

We reverse the trial court's judgment and remand the cause for further proceedings.